UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANESTHHESIA BUSINESS
CONSULTANTS, LLC,  Case No. 17-11589

    Plaintiff,

v.

EMCARE, INC.,  HON. AVERN COHN

    Defendant.

_____/

# ORDER DENYING CROSS-MOTIONS FOR SUMMARY JUDGMENT (DOCS 31, 37)

## I.   INTRODUCTION

This is a breach of contract case. Plaintiff/Counter-Defendant, Anesthesia Business Consultants, LLC, ("ABC") is suing Defendant/Counter-Plaintiff, EmCare, Inc. ("EmCare"), for breach of contract and tortious interference. EmCare has filed a counterclaim for breach of contract and conversion. The crux of the dispute between the parties is whether their contractual relationship entitled ABC to a 2% or 6% billing rate for two EmCare affiliates.

Each party has filed a motion for summary judgment. (Docs. 31, 37). ABC's tortious interference claim and EmCare's conversion claim are prefaced on a favorable decision regarding their claims for breach of contract. Because the Court concludes that summary judgment is inappropriate as to each parties' breach of contract claim, a discussion about dependent claims is unnecessary. For the reasons that follow, the motions for summary judgment (Docs. 31, 37) are DENIED.

## II. BACKGROUND

The parties' papers do not detail their transactional relationship and contain generalized statements regarding the services that they provide. This makes it difficult for the Court to fully appreciate the terms of the contract at issue. The Court's understanding of the record, as best as can be gleaned from the parties' papers and oral argument, is as follows.

ABC is a Michigan company that provides billing services to healthcare providers. EmCare is a Texas company that provides management services to its affiliated entities in the healthcare industry. ABC assists EmCare in billing insurance carriers. After billing the insurance carriers, ABC receives payment and calculates its service fee. After determining its fee, ABC sends the entire payment to EmCare and its affiliates. Finally, ABC sends an invoice for its service fee.

In 2012, EmCare (through an affiliate California EM-I Medical Services) acquired Golden State Anesthesia Consultants ("Golden State") and St. Vincent's Anesthesia Medical Group ("St. Vincent's"). At that time, ABC was providing billing services to Golden State and St. Vincent's; pursuant to two separate contracts that entitled ABC to 6% of the net collections received for anesthesia services.

In 2014, EmCare and ABC entered into a contract that entitled ABC to 2% of the net collections received for anesthesia services. In relevant part, the 2014 contract states:

> 7.5 Client agrees to pay ABC <u>two</u> percent (<u>2</u>%) of the net collections received by Client for anesthesia, acute and chronic pain management accounts billed by ABC, excluding amounts received from a collection agency for Accounts billed by ABC and to pay such amounts within ten (10) days of the date of receipt of an invoice.

The contract makes no separate mention of EmCare's affiliates Golden State and St. Vincent's. The contract also makes no mention of whether it applies to services rendered to future EmCare affiliates or existing EmCare affiliates.

ABC says that the contract only covers future affiliates because it "required the parties to designate which entities would be assigned the 2% billing rate by executing a Billing Agency Addendum for each such entity." (Doc. 35, ¶19). To support this reading of the contract, ABC cites three provisions:

> 13. NON-EXCLUSIVE BILLING RIGHT
> ABC agrees and acknowledges that it shall not be an exclusive provider of the Services set forth in this Agreement for the Client. Notwithstanding the preceding sentence, ABC shall be the exclusive provider at sites designated and assigned to ABC by Client in its sole discretion including without limitation, the exclusive right to process, bill for and receive its fee for all physician and CRNA Services for Client during the term of this Agreement or renewal.
>
> 15.2  Neither party to this Agreement may assign its rights or obligations under this Agreement without the express written consent of the other party, which consent shall not be unreasonably withheld, except that the obligations of ABC under this Agreement may be provided or fulfilled by any, parent, subsidiary, affiliate, or successor corporations, so long as ABC retains full responsibility for such obligations and Client has been provided with written notice of this assignment. This Agreement will inure to the benefit of and be binding upon the parties hereto, and, to the extent permitted hereunder, their respective and permitted assigns.
>
> 15.13  For each site that Client assigns to ABC for billing services, ABC and Client's affiliated company shall execute a Billing Agency Addendum, attached to this Agreement as Exhibit D, granting ABC to bill for services on behalf of the affiliated entity and its physicians.

ABC says that the 2014 contract is not a "master" agreement that contemplated all EmCare affiliates; and that Golden State and/or St. Vincent's inclusion in the 2% billing rate required a Billing Agency Addendum. (Doc. 35 at ¶ 18).

3

On the other hand, EmCare says the contract was meant to be a "master" agreement that contemplated all Emcare affiliates at the time the agreement was made, which meant no Billing Agency Addendum was required. (Doc. 32, at ¶18). Both parties submit parole evidence to support their interpretations of the contract.

### III. LEGAL STANDARD

A motion for summary judgment will be granted if the moving party demonstrates that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." In re Dollar Corp., 25 F.3d 1320, 1323 (6th Cir. 1994) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251–52 (1986)). In doing so, the Court "must view the evidence in the light most favorable to the non-moving party." Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc., 69 F.3d 98, 101–02 (6th Cir. 1995).

### IV. APPLICABLE LAW

"In contract actions, summary judgment may be appropriate when the documents and evidence underlying the contract are undisputed and there is no question as to intent." Cook v. Little Caesar Enterprises, Inc., 210 F.3d 653, 655–56 (6th Cir. 2000) (citing P.F. Manley v. Plasti-Line, Inc., 808 F.2d 468, 471 (6th Cir.1987)). "Normally, however, disputed issues of contractual intent are considered to be factual issues which

4

preclude an award of summary judgment." Id. (citing Parrett v. American Ship Building Co., 990 F.2d 854, 858 (6th Cir.1993) (noting that the interpretation of ambiguous contract language is usually a factual issue turning on the intent of the parties)).

When a contractual term is ambiguous and cannot resolve a dispute, parole evidence can be considered "to allow the trier of fact to elucidate the meaning of that ambiguous contract." Stryker Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 842 F.3d 422, 427 (2016).

### V. ANALYSIS

Here, the 2014 contract is ambiguous. The contract does not specify whether the EmCare affiliates Golden State and St. Vincent's are covered under the 2% billing rate. Also, the contract makes no reference as to whether it supersedes past contracts and applies to all of EmCare affiliates, or whether it applies to the billing of any future affiliates. Having determined that the contract is ambiguous, the Court looks to whether either party is entitled to summary judgment based upon parole evidence.

There exists conflicting parole evidence that makes granting summary judgment inappropriate. For example:

1. EmCare says that ABC had actual knowledge of Golden State and St. Vincent's acquisition by EmCare. (Doc. 32, ¶ 11, 12, 13). ABC disputes that they had knowledge that EmCare had acquired Golden State and St. Vincent's. (Doc. 35, ¶11, 12, 13).

2. EmCare says that the 2014 contract was purposed to reduce the 6% rate paid by Golden State and St. Vincent's. (Doc. 32, ¶ 15). ABC says that Golden State and/or St. Vincent's were never mentioned during any meetings or contract negotiations. (Doc. 35, ¶ 15).

3. EmCare says that the 2014 contract was intended to be a "master" agreement that covered all EmCare affiliates. (Doc. 32, ¶ 18, 19). ABC says that the contract was only intended to cover future EmCare affiliates. (Doc. 35, ¶ 15, 16, 17, 18).

5

4. EmCare says that Billing Agency Addendums were not required under the 2014 contract. EmCare supports this position by saying that it did not file addendums as to other affiliates that ABC billed for under the 2014 contract. (Doc. 32, ¶ 23). ABC says that EmCare did provide Billing Agency Addendums for some of the other entities billed under the 2014 contract. (Doc. 35, ¶ 23).

5. EmCare says that ABC knew billing Golden State and St. Vincent's at the 6% rate was improper under the 2014 contract. (Doc. 32, ¶ 25, 26, 27). ABC disputes such knowledge and says that it never agreed to a 2% billing rate under the 2014 contract. (Doc. 35, ¶ 25, 26, 27).

Because these facts are material to interpreting the parties' contractual intent, and these facts are reasonably disputed by both parties, summary judgment must be denied.

SO ORDERED.

                                          s/Avern Cohn
                                          AVERN COHN
                                          UNITED STATES DISTRICT JUDGE

Dated: 6/26/2019
Detroit, Michigan